

**FILED**

SEP 3 0 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

CV 09   Case No.:   **4626**



**JURY TRIAL DEMANDED**

**JSW**

*E-filing*

| | |
|---|---|
| MARGARET HUNTER, derivatively on behalf of herself and Robert Half International, Inc. | |
| Plaintiff, | |
| v. | |
| HAROLD M. MESSMER, JR., M. KEITH WADDELL ANDREW S. BERWICK, JR. FREDERICK P. FURTH, EDWARD W. GIBBONS BARBARA J. NOVOGRADAC ROBERT J. PACE FREDERICK A. RICHMAN J. STEPHEN SCHAUB THOMAS J. RYAN PAUL F. GENTZKOW MICHAEL C. BUCKLEY, ROBERT W. GLASS STEVEN KAREL | |
| Defendants, | |
| -and- | |
| ROBERT HALF INTERNATIONAL, INC | |
| Nominal Defendant. | |



## SHAREHOLDER DERIVATIVE COMPLAINT

1

1.      Plaintiff, as and for her verified derivative complaint alleges upon her personal knowledge as to herself and her acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

2.      This is a shareholder derivative action brought on behalf of herself and Robert Half International, Inc. ("RHI"). Plaintiff is seeking to recover damages caused to the Company by its directors and/or senior officers who-by engaging in, approving of, or acquiescing to a campaign of insider trading-breached their fiduciary duties to the Company and were unjustly enriched by their conduct at the Plaintiff and the Company's expense.  Named as a Nominal Defendant is the Company, and as Defendants certain of the Company's Directors and/or senior executive officers.

3.      While publicly promoting RHI's growth prospects and placing the Company up for sale and confidently forecasting a robust financial performance for the future, Defendants privately understood that the Company was under severe threat and is under severe fiscal stress and poised to report disappointing results to investors.  Armed with non-public knowledge, that RHI has violated the Securities and Exchange Act of 1933 and 1934 and the Sarbanes-Oxley Act of 2002.

4.      With this action, Plaintiff seeks to have the proceeds of these sales disgorged and returned to the Plaintiff and to the Company

5.      Defendants already altered the RHI corporate structure as the Company publicly contemplates a new "non-public" Company. Since as early as April of 2007, RHI has known about this impending securities litigation and RHI has been taking defensive steps in anticipation

2

of this exact litigation. Defendants have become more aggressive in dissipation of the corporate assets and are actively pursuing the sale of the Company. Recently, the Defendants are pillaging the assets of the Company using the Stock Incentive Plan as the conduit.

6.  As reflected in RHI's May 2008 SEC Form 8-K, it is apparent that the RHI Chief Executive Officer and the Chief Financial Officer are also attempting to indemnify themselves against potential liability from Certification Pursuant to Rule 13a-14 of the Securities and Exchange Act of 1934 and the Certification Pursuant to 18 U.S.C. 1350, As Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002.

## JURISDICTION

7.  This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. Section 1332(a) (2).

8.  Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a), as many of the acts and practices complained of herein occurred in substantial part in this District.

## PARTIES

9.  The following defendants are individuals who reside in the United States and who served as directors and/or officers of Robert Half International, Inc. ("RHI"), at all times relevant herein, was and is, a corporation incorporated under the laws of Delaware. According to registration papers RHI filed with the California Secretary of State, RHI's corporate headquarters are at 2884 Sand Hill Road, Suite 200, Menlo Park, San Mateo County, California, 94025.

10.  RHI conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency, and temporary personnel service, either directly or indirectly through various direct or indirect subsidiaries. The Complaint will

3

refer to all such defendants as a "Director" with respect to the corporations that they served as a director during the relevant periods, December 8, 2003 thru April 27, 2007 and April 28, 2007 to the present.

11.     The executive officers of the Company are also officers of the Company's wholly owned subsidiaries.

12.     Defendant Harold M. Messmer ("Messmer") has been Chairman of the Board since 1988 and Chief Executive Officer since 1987. From 1985 through 2004, he served as President. Mr. Messmer is a member of the Executive Committee. The Executive Committee has all of the powers of the Board of Directors, with certain specific exceptions required by Delaware law.

13.  According to Forbes Magazine Messmer's compensation was $74.25 mil in 2006 and he was on the Forbes list ranked as the 11th the highest paid CEO. While his employer the RHI shareholders watch the value stock decrease 7% year-to-date

14.     Mr. Messmer is a native of Jackson, Mississippi. Messmer is a former member of the Board of Directors of O'Melveny & Myers LLP, a law firm. Mr. Richman also served as a director of the Company from 1994 through 2001.

15.     Defendant M. Keith Waddell ("Waddell") has been Vice Chairman of the Board since 1999, President since 2004 and Chief Financial Officer since 1988. He served as Treasurer from 1987 until 2004.   The Stock Plan Committee, a subcommittee of the Compensation Committee. The Stock Plan Committee administers the Company's equity incentive plans. Mr. Waddell is the Stock Plan Administrator.

16.     Defendant Paul Gentzkow ("Gentzkow ") has been President and Chief Operating Officer-Staffing Services since 2004. From 2000 until 2004, he served as Executive Vice

4

President of Operations. For more than five years prior to his election as an executive officer, he served as Director of Field Operations.

17.     Defendant Robert Glass ("Glass ") has been Executive Vice President of Corporate Development since 2004. From 1993 until 2004, he served as Senior Vice President of Corporate Development. From 1987 until 1993, he served as Vice President.

18.     Defendant Michael C. Buckley ("Buckley ") has been Treasurer since 2004 and Executive Vice President and Chief Administrative Officer since February 2007. He was Vice President from 2001 through February 2007 and served as Controller of Corporate Accounting from 1999 until 2004. From 1995 through 1999, he held various other positions with the Company.

19.     Defendant Steven Karel ("Karel ") has been General Counsel of the Company since 1989 and Secretary since 1993. He has been Senior Vice President since February 2007 and from 1989 through then was Vice President.

20.     Defendant Andrew S. Berwick, Jr. ("Berwick") has been President of Berwick-Pacific Corporation, a real estate development company, for more than the five years Mr. Berwick served on the 2002 Nominating, Stock Plan, Audit, and Compensation Committees Mr. Berwick served on the 2003 Nominating Committee. Mr. Berwick served on the Nominating, Audit, and Compensation Committees from 2004 thru the present. The function of the Compensation Committee is to establish compensation policies for the Company's senior officers and to administer compensation plans in which officers; directors and employees are eligible to participate.

21.     Defendant Frederick P. Furth ("Furth") has been senior partner of a Law Firm, The Furth Firm LLP for more than the past five years. He is the Proprietor of Chalk Hill Estate

5

Winery, LLC and Chalk Hill Estate Vineyards, LLC and Chairman of the Board of the Furth Foundation. Mr. Furth served on the 2002 Executive Committee, Compensation, Stock Plan, Nominating, and Governance Committees. Mr. Furth has served on the Executive Committee, Compensation, Nominating, and Governance Committees from 2003 thru present. The Nominating Committee's role is to recommend candidates to fill any vacancy that may occur in the Board of Directors, develop and recommend corporate governance guidelines to the Board and oversee the evaluation of the Board and management.

22.     Defendant Edward Gibbons ("Gibbons") is a private investor. For more than five years prior to and through 2008, he was owner and president of Gibbons & Co., Inc., a private merchant banking firm. Mr. Gibbons from 2002 to the present served on Executive, Audit Committee, Nominating, and Governance Committees. The Board of Directors has also determined that Edward W. Gibbons and J. Stephen Schaub, each of whom are members of the Audit Committee, they both "audit committee financial expert" and "independent" in accordance with the requirements of Item 401(h) of Securities and Exchange Commission Regulation S-K.

23.     Defendant Frederick Richman ("Richman") has been a Consultant to Deloitte Tax, LLP since May 2008. From 2001 to May 2008, he was a Principal with Deloitte Tax, LLP. Prior to 2001, he was a partner with O'Melveny & Myers LLP, a law firm. Mr. Richman also served as a director of the Company from 1994 through 2001. Mr. Richman from 2008 to the present served on Executive, Audit Committee, Compensation Committee, Nominating, and Governance Committees.

6

24.     Defendant J. Stephen Schaub ("Schaub") has been President and owner of J.S. Schaub & Co., Inc., a firm engaged in investments and financial consulting, for more than the past five years. Mr. Schaub served on the 2002 Audit, Nominating, and Governance Committees from 2002 thru the present. The Board of Directors has also determined that Edward W. Gibbons and J. Stephen Schaub, each of whom is a member of the Audit Committee, are each an "audit committee financial expert" and "independent" in accordance with the requirements of Item 401(h) of Securities and Exchange Commission Regulation S-K.

25.     Defendant Thomas J. Ryan ("Ryan") has been Chairman of the Board of Directors and Chief Executive Officer of ISU International a franchisor of independent insurance agents since 1979. Mr. Ryan served on the 2002 Compensation Committee, Nominating, and Governance Committees thru 2007. Mr. Ryan was a member of the Executive Committee from 2004 thru 2007.

26.     Defendant Robert J. Pace ("Pace") is currently an advisory director of Goldman, Sachs & Co. Prior to February 2008, he served as managing director. He has been with Goldman Sachs since 1986. Mr. Pace is a member of the Nominating and Governance Committee.

27.     Defendant Barbara Novogradac ("Novogradac ") has been president of Novogradac Investment Company, a private real estate investment company that invests in residential rental properties, land development opportunities and light industrial commercial assets. Ms. Novogradac was elected to the Board in May 2009.

7

## **DEFENDANT'S FIDUCIARY DUTIES**

28.     Owing their positions as officers, directors and fiduciaries of RHI and because of their ability to control the business and corporate affairs of the Company, Defendants owed RHI and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage RHI in a fair, just, honest and equitable manner.

29.     Defendants were and are required to act in furtherance of the best interests of RHI and its shareholders to benefit all shareholders equally and not in furtherance of their personal self-interest or benefit.

30.     Each officer and director of the Company owes to RHI and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

31.     Defendants, because of their positions of control and authority as directors and officers of RHI, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with RHI, each of the Defendants had knowledge of material non-public information regarding the Company.

32.     According to the Company's Corporate Governance Guidelines, each member of the Board of Directors shall exercise "his or her business judgment in good faith and in a manner

8

that he or she reasonably believes to be in the best interests of the Company and will endeavor to enhance the long-term value of the company for its stockholders."

33.     According to the Company's Code of Conduct, moreover, officers and directors are required to exemplify "ethical conduct in their actions." Additionally, the Company's Code of Conduct prohibits making "inaccurate or misleading reports, certifications, claims, or statements to any government agency."

## SUBSTANTIVE ALLEGATIONS

34.     Defendant Robert Half International is a publicly traded corporation in the business of temporary services. Protiviti, its wholly owned subsidiary employed Plaintiff as Director of Financial Investigations and Litigation Support until her discharge on April 27, 2007, on the ground of poor job performance.

35.     At the time of Plaintiff's discharge, Plaintiff was scheduled to attend the May 3, 2007 annual Shareholders meeting to inform the Shareholders of concerns regarding inappropriate billing practices specifically over billing Protiviti client Fannie Mae and the American International Group, Inc. ("AIG"). Plaintiff was informed that she would not be compensated in accordance with the Protiviti Incentive Plan as she had been in her three prior years with Protiviti. Plaintiff was discharged and her stock was cancelled on the eve of the 2007 Annual Shareholders meeting. Defendants Messmer and Waddell manufactured Plaintiff's termination.

36.     Plaintiff not only disputes, Defendants' assertion of poor job performance, Nevertheless, Plaintiff alleges that Defendants illegally discharged her in retaliation for engaging

9

in whistleblower activity, which is protected by the Sarbanes-Oxley Act of 2002. Plaintiff expressed concerns regarding matters that she reasonably believed constituted violations of rules and regulations of the Securities and Exchange Commission Acts, including but not limited to the Sarbanes-Oxley Act of 2002, or federal law relating to fraud against shareholders.

37.    Pursuant to recent shareholder approval, RHI has authority to issue 10,000,000 million new shares of stock with an aggregate value of \$253 million pursuant to the Stock Incentive Plan, which Mr. Messmer and Waddell, the Stock Plan Administrator have direct control over issuing these securities. Plaintiff is concerned about asset dissipation, for example, on April 24, 2009; RHI shareholders approved a \$17 million payment to Mr. Messmer.

38.    The Institutional Investors approved changes to corporate By-Laws and Articles and the Institutional Investors and Insider Directors and Officers essentially gave Messmer and Waddell a blank check.  The Defendants public comments suggest that RHI has taken or is contemplating creating Special Circumstances that will trigger a Change In Control. In the event of a Change in Control Mr. Messmer has recently secured a golden parachute, including \$1 2 million in unrestricted stock exercisable and \$63 million in Non-Qualified Deferred Compensation, stock and other benefits.

39.    Mr. Messmer is fully vested in \$112 million in unexercised stock available to exercise and Mr. Messmer appears to be positioning himself to resign as Chairman and Chief Executive Office prior to the expiration of his contract in December 2012. Mr. Messmer is a member of the Executive Committee. The Executive Committee has all of the powers of the full Board of Directors, with certain specific exceptions required by Delaware law.

10

40.     As set forth in greater detail below, from December 8, 2003 to the present, Defendants issued, or caused to be issued, a series of public statements announcing the Company's ostensibly "record" results and providing investors with glowing predictions for RHI's financial performance in the future.

41.     During the same period, however, a large group of Company insider's were cashing out of RHI, together selling nearly $200 million in RHI stock. Since Plaintiff instituted litigation against RHI on June 13, 2007,   the insider trading was triggered by internal, non-public information about the Company's violations of the Securities and Exchange Act and the Sarbanes-Oxley Act of 2003 and the increasingly precarious and weakening financial condition, which has yet to be revealed to the Plaintiff and other investors.

42.     In 2008 and the first seven months of 2009 the company insiders accelerated their stock trades to a percentage increase from 6 months prior. These ill-gotten gains unjustly enriched the Defendants of the Plaintiff and of the Company.  Through their actions, the Defendants also breached their fiduciary duties to RHI, and, accordingly, the proceeds from these stock sales should be disgorged and returned to the Plaintiff and to the Company.

43.     For the six months, ended June 30, 2008, net income was $145.4 million or $.91 per share, on revenues of $2.45 billion. Commenting on these results, Messmer stated, among things, as follows "The labor markets remained weak during the second quarter, with the U.S. unemployment rate reaching a 26-year high of 9.5 percent in June," said Harold M. Messmer, Jr., chairman and CEO of Robert Half International. "While we continued to see year-over-year and sequential revenue declines, we were encouraged that the sequential declines were significantly

11

less than those reported in the previous quarters." He added, "Our field offices have continued to do an excellent job of managing costs and have been opportunistic in capturing new business. We remain in solid financial condition with essentially no debt." Mr. Messmer did not disclose RHI's true financial picture. For example, RHI's assets may be overvalued due to the Company's treatment of certain corporate assets including the Company's goodwill impairment.

44. Defendants Messmer and Waddell have now deemed the earnings per share "confidential." Messmer and Waddell can keep confidential among themselves and the other institutional investors their key performance driver matrix of their annual performance, incentive, stock options, grats, and other forms of their own compensation. Messmer and Waddell have direct control in determining their own compensation thru their respective positions on the Compensation Committee, Executive Committee, Chair, and Vice Chair of the RHI board of directors and the Stock Plan Administrator, Defendant Waddell.

45. As Defendants were aware, the statements set forth did not accurately portray RHI's compliance with governmental regulations and financial results Robert Half International Inc. is currently rated as having Average Accounting & Governance Risk (AGR), receiving an AGR Score of 61 out of a possible 100. This places them in the 39th percentile among all companies, indicating higher Accounting & Governance Risk (AGR) than 61% of companies.

46. The RHI forensic risk summary table below highlights materials risks, if any, and lists the most critical business issue for each risk. AGR Impact shows the deductions from a perfect 100 AGR score due to flagged metrics.

12

| RHI | RISK | **AGR® IMPACT** | TOP ISSUE |
|---|---|---|---|
| Corporate Governance Events | -10.698 | | Chairman Is Also CEO |
| High Risk Events | -5.79 | | Share Repurchases |
| Revenue Recognition | -0 | | N/A |
| Expense Recognition | -14.981 | | Amortization Expenses/Gross Intangibles |
| Asset-Liability Valuation | -7.531 | | Other Current Assets/Current Assets |

AGR scores are based on statistical analysis of accounting and governance risk factors. Lower scores indicate heightened corporate integrity risk, *indicating an increased likelihood of future class action litigation, material financial restatements or impaired equity performance.* About Audit Integrity and AGR Ratings-Audit Integrity is an independent research service, which forensically analyzes the corporate behavior of over 8,000 publicly traded companies, to detect and measure high-risk accounting and governance practices, which are statistically associated with decreased equity price performance, increased shareholder litigation and major financial restatement.   Through extensive internal and third-party back tests, Audit Integrity has established a direct correlation between its Accounting and Governance Risk (AGR) ratings and the likelihood of such adverse events. Its services are relied upon by a variety of clients, including institutional investors, major insurers and auditors, regulatory bodies and Fortune 500 companies.

47.     Since January 1, 2009, the stock of RHI continued to plummet. On the eve of the May 5, 2009 annual shareholders meeting of course, by this time a range of Company insiders—including RHI's Chief Executive Officer and several members of its board of directors—had already sold approximately \$9 million in RHI stock.

13

| Robert Half International Inc. Insider Stock Sales for the Period of January 1, 2009 through July 31, 2009 | | | | |
|---|---|---|---|---|
| **Insider** | **Date** | **Shares Disposed** | **Price** | **Amount** |
| Harold M. Messmer, Jr. | January 3, 2009 | 53,946 | 21.35 | $1,151,747 |
| M. Keith Waddell | January 3, 2009 | 31,883 | 21.35 | $680,702 |
| Paul F. Genztkow | January 3, 2009 | 23,848 | 21.35 | $509,154 |
| Robert W. Glass | January 3, 2009 | 7,373 | 21.35 | $157,413 |
| Steven Karel | January 3, 2009 | 7,030 | 21.35 | $150,090 |
| Frederick P. Furth | February 4, 2009 | 200 | $16.81 | 3,362 |
| Frederick P. Furth | February 4, 2009 | 400 | $16.82 | 6,728 |
| Frederick P. Furth | February 4, 2009 | 100 | $16.83 | $1,683 |
| Frederick P. Furth | February 4, 2009 | 1,100 | $16.85 | $18,535 |
| Frederick P. Furth | February 4, 2009 | 484 | $16.87 | $8,165 |
| Frederick P. Furth | February 4, 2009 | 400 | $16.88 | $6,752 |
| Frederick P. Furth | February 4, 2009 | 4,400 | $16.89 | $74,316 |
| Frederick P. Furth | February 4, 2009 | 2,500 | $16.9 | $42,250 |
| Frederick P. Furth | February 4, 2009 | 2,000 | $16.91 | $33,820 |
| Frederick P. Furth | February 4, 2009 | 4,200 | $16.92 | $71,064 |
| Frederick P. Furth | February 4, 2009 | 1,000 | $16.93 | $16,930 |
| Frederick P. Furth | February 4, 2009 | 1,400 | $16.94 | $23,716 |
| Frederick P. Furth | February 4, 2009 | 600 | $16.95 | $10,170 |

| Robert Half International Inc. Insider Stock Sales for the Period of January 1, 2009 through July 31, 2009 | | | | |
|---|---|---|---|---|
| **Insider** | **Date** | **Shares Disposed** | **Price** | **Amount** |
| Frederick P. Furth | February 4, 2009 | 600 | $16.96 | $10,176 |
| Frederick P. Furth | February 4, 2009 | 200 | $16.97 | $3,394 |
| Frederick P. Furth | February 4, 2009 | 200 | $17 | $3,400 |
| Frederick P. Furth | February 4, 2009 | 200 | $17.02 | $3,404 |
| Frederick P. Furth | February 4, 2009 | 1,000 | $17.16 | $17,160 |
| Frederick P. Furth | February 4, 2009 | 1,000 | $17.19 | $17,190 |
| Frederick P. Furth | February 4, 2009 | 1,216 | $17.34 | $21,085 |
| Frederick P. Furth | February 4, 2009 | 1,300 | $17.35 | $22,555 |
| Frederick P. Furth | February 4, 2009 | 5,000 | $17.41 | $87,050 |
| Frederick P. Furth | February 4, 2009 | 100 | $17.42 | $1,742 |
| Frederick P. Furth | February 4, 2009 | 200 | $17.43 | $3,486 |
| Frederick P. Furth | February 4, 2009 | 200 | $17.54 | $3,508 |
| Edward W. Gibbons | February 13, 2009 | 9,100 | $17.67 | 160,797 |
| Edward W. Gibbons | February 13, 2009 | 500 | $17.68 | 8,840 |
| Edward W. Gibbons | February 13, 2009 | 400 | $17.69 | 7,076 |
| Edward W. Gibbons | February 13, 2009 | 1,000 | $18.011 | 18,011 |
| Edward W. Gibbons | February 13, 2009 | 300 | $18.02 | 5,406 |
| Edward W. Gibbons | February 13, 2009 | 2,000 | $18.03 | 36,060 |
| Edward W. Gibbons | February 13, 2009 | 300 | $18.0302 | 5,409 |

15

| Robert Half International Inc. Insider Stock Sales for the Period of January 1, 2009 through July 31, 2009 | | | | |
|---|---|---|---|---|
| **Insider** | **Date** | **Shares Disposed** | **Price** | **Amount** |
| Edward W. Gibbons | February 13, 2009 | 700 | $18.031 | 12,621 |
| Edward W. Gibbons | February 13, 2009 | 1,200 | $18.0313 | 21,637 |
| Edward W. Gibbons | February 13, 2009 | 200 | $18.0325 | 3,606 |
| Edward W. Gibbons | February 13, 2009 | 100 | $18.033 | 1,803 |
| Edward W. Gibbons | February 13, 2009 | 2,166 | $18.04 | 39,074 |
| Edward W. Gibbons | February 13, 2009 | 100 | $18.0425 | 1,804 |
| Edward W. Gibbons | February 13, 2009 | 1,100 | $18.05 | 19,855 |
| Edward W. Gibbons | February 13, 2009 | 600 | $18.051 | 10,830 |
| Edward W. Gibbons | February 13, 2009 | 400 | $18.0513 | 7,220 |
| Edward W. Gibbons | February 13, 2009 | 100 | $18.055 | 1,805 |
| Edward W. Gibbons | February 13, 2009 | 2,734 | $18.06 | 49,376 |
| Edward W. Gibbons | February 13, 2009 | 700 | $18.061 | 12,642 |
| Edward W. Gibbons | February 13, 2009 | 1,000 | $18.0613 | 18,061 |
| Edward W. Gibbons | February 13, 2009 | 950 | $18.07 | 17,166 |
| Edward W. Gibbons | February 13, 2009 | 2,200 | $18.08 | 39,776 |
| Edward W. Gibbons | February 13, 2009 | 300 | $18.0802 | 5,424 |
| Edward W. Gibbons | February 13, 2009 | 600 | $18.081 | 10,848 |
| Edward W. Gibbons | February 13, 2009 | 700 | $18.0813 | 12,656 |
| Edward W. Gibbons | February 13, 2009 | 300 | $18.09 | 5,427 |

16

| Insider | Date | Shares Disposed | Price | Amount |
|---------|------|-----------------|-------|--------|
| **Robert Half International Inc.** | | | | |
| **Insider Stock Sales** | | | | |
| **for the Period of** | | | | |
| **January 1, 2009 through July 31, 2009** | | | | |
| Edward W. Gibbons | February 13, 2009 | 250 | $18.1 | 4,525 |
| Harold M. Messmer, Jr. | April 24, 2009 | 742,386 | 23.46 | $17,416,375 |
| Andrew S. Berwick | April 27, 2009 | 14,389 | 23.04 | $331,522 |
| J. Steven Schaub | April 27, 2009 | 14,389 | 23.04 | $331,522 |
| Michael C. Buckley | April 27, 2009 | 11,930 | 23.04 | $274,867 |
| Robert W. Glass | April 28, 2009 | 16,641 | 22.75 | $378,582 |
| Frederick A. Richman | April 29, 2009 | 24,000 | 13.81 | $331,440 |
| Frederick A. Richman | May 4, 2009 | 2,600 | $23.7 | $61,620 |
| Frederick A. Richman | May 4, 2009 | 2,000 | $23.7068 | $47,413 |
| Frederick A. Richman | May 4, 2009 | 600 | $23.71 | $14,226 |
| Frederick A. Richman | May 4, 2009 | 500 | $23.72 | $11,860 |
| Frederick A. Richman | May 4, 2009 | 3,600 | $23.73 | $85,428 |
| Frederick A. Richman | May 4, 2009 | 1,200 | $23.735 | $28,482 |
| Frederick A. Richman | May 4, 2009 | 100 | $23.74 | 2,374 |
| Frederick A. Richman | May 4, 2009 | 400 | $23.7401 | $9,496 |
| Frederick A. Richman | May 4, 2009 | 2,500 | $23.75 | $59,375 |
| Frederick A. Richman | May 4, 2009 | 200 | $23.7501 | $4,751 |
| Frederick A. Richman | May 4, 2009 | 100 | $23.7502 | 2,375 |
| Frederick A. Richman | May 4, 2009 | 200 | $23.7568 | 4,751 |

**Robert Half International Inc.**
**Insider Stock Sales**
**for the Period of**
**January 1, 2009 through July 31, 2009**

| Insider | Date | Shares Disposed | Price | Amount |
|---|---|---|---|---|
| Edward W. Gibbons | May 5, 2009 | 24,000 | 13.81 | $331,440 |
| Edward W. Gibbons | May 5, 2009 | 14,083 | 23.54 | $331,514 |
| Edward W. Gibbons | May 5, 2009 | 84,283 | 23.54 | $1,984,021 |
| Edward W. Gibbons | July 27, 2009 | 3,899 | 24.07 | $93,848 |
| Edward W. Gibbons | July 27, 2009 | 100 | 24.70 | $2,470 |
| Edward W. Gibbons | July 27, 2009 | 1,500 | 24.71 | $37,065 |
| Edward W. Gibbons | July 27, 2009 | 100 | 24.71 | $2,471 |
| Edward W. Gibbons | July 27, 2009 | 2,100 | 24.71 | $51,891 |
| Edward W. Gibbons | July 27, 2009 | 100 | 24.71 | $2,471 |
| Edward W. Gibbons | July 27, 2009 | 1,400 | 24.73 | $34,622 |
| Edward W. Gibbons | July 27, 2009 | 2,201 | 24.74 | $54,453 |
| Edward W. Gibbons | July 27, 2009 | 100 | 24.74 | $2,474 |
| Edward W. Gibbons | July 27, 2009 | 3,000 | 24.75 | $74,250 |
| Edward W. Gibbons | July 27, 2009 | 1,000 | 24.76 | $24,760 |
| Edward W. Gibbons | July 27, 2009 | 1,800 | 24.77 | $44,586 |
| Edward W. Gibbons | July 27, 2009 | 200 | 24.77 | $4,954 |
| Edward W. Gibbons | July 27, 2009 | 2,200 | 24.78 | $54,516 |
| Edward W. Gibbons | July 27, 2009 | 200 | 24.79 | $49,058 |
| Edward W. Gibbons | July 27, 2009 | 100 | 24.79 | $2,480 |

| Robert Half International Inc. Insider Stock Sales for the Period of January 1, 2009 through July 31, 2009 | | | | |
|---|---|---|---|---|
| **Insider** | **Date** | **Shares Disposed** | **Price** | **Amount** |
| Robert W. Glass | July 30, 2009 | 25,909 | 24.06 | $623,370 |
| Edward W. Gibbons | July 31, 2009 | 19,100 | 25.00 | $477,500 |
| Edward W. Gibbons | July 31, 2009 | 900 | 25.05 | $22,545 |
| | | | | |

48.     The foregoing shares were sold by Defendants, or the sale of such shares was

acquiesced to or approved by Defendants, with knowledge of material adverse non-public

information, and thus Defendants violated their duties of good faith and loyalty to the Company

and are liable for insider trading profits received as a result of the same.  Plaintiff seeks damages

on behalf of herself and with respect to the sales of the RHI stock described herein.

## DEMAND WOULD BE FUTILE

49.     Plaintiff brings this action derivatively in the right, for the benefit of the Plaintiff,

and of RHI to redress injuries suffered as a result of the breaches of the fiduciary duties by the

Defendants and to recover Defendants and other insiders' illegal insider trading profits.

50.     Plaintiff will adequately and fairly represent the interests of herself and the

interests of RHI and its shareholders in enforcing and prosecuting its rights.

51.     Plaintiff was a holder of such stock during the period of December 8, 2003 in which the Defendants' wrongful course of conduct alleged herein was and is occurring thru the present.

52.     As a result of the facts set forth herein, Plaintiff made a good faith effort on April 23, 2007, to request that the Board act and urged the Company to mitigate potential reputational and threats to the Company by voluntarily becoming compliant with Federal and State Government regulations. Such a demand would be a futile and useless act because the majority of the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the reasons that follow.

53.     The Board exhibited a sustained and systematic failure to fulfill their fiduciary duties by actively participating or acquiescing in the wrongdoing alleged herein and/or by failing to implement adequate financial and governance controls and procedures necessary to reasonably assure that the wrongdoing alleged herein, did not occur, including insider selling, knowingly filing false Certifications under the Securities and Exchange Act, the Sarbanes-Oxley Act of 2002 and the dissemination of falsely positive information intended to drive up the stock price of RHI and to make it more attractive for potential purchasers of the Company.

54.     Finally the Golden Parachutes in excess of $250 million in shareholder value contemplated to be paid to Defendants, even in the event of termination for cause. Such failures could not have been an exercise of good faith business judgment and the Board members face substantial likelihood of liability for such breaches of fiduciary duties.

20

55.     The Board participated in drafting, preparation, and/or approval of the various public communication complained of herein, and were aware of, and/or recklessly disregarded, the misstatements contained therein and omissions there from, and were aware of their materiality, false and misleading nature, and were aware of and acquiesced to or approved to the sale of RHI stock by insiders as set forth herein. Because of their Board membership and/or executive and managerial positions with RHI, each of the members of the Board had access to the undisclosed information about the RHI's failure to comply with SEC and Sarbanes-Oxley Act of 2002 and other governmental regulations.

56.     Each of the Board members participated and either knew or recklessly regarded the positive representations made by or about RHI and its status as "Solid" debt free company and to the potential purchasers of the Company was and is false and misleading. Several of the Board members themselves participated in the insider-trading scheme. Also, most of, if not all of the members of the Board have prior direct or indirect relationships.

57.     The Defendants because of their positions of control and authority as officers/and or directors of the Company were able to and did control the content of the Company's statements during the relevant period. Each Defendant was provided with copies of the documents alleged herein to be misleading prior to and shortly after its issuance and/or had the ability and/or opportunity to prevent its issuance or cause it to be corrected. Accordingly, each of the Defendant's was responsible for the accuracy of the representations contained herein

58.     The Board had a responsibility and obligation to assure that insider trading does not injure to the detriment of the Company and to assure that all SEC reports were and are

21

truthful and not misleading. The Board is also charged with ensuring that the Company has proper anti-fraud controls and other oversight procedures in place that would have detected and prevented the false and misleading statements put out by the Company to the public that are described in this complaint, but failed to do so.

59. RHI has been exposed to significant losses due to the wrongdoing complained of herein; yet, the Board has not filed any lawsuits against themselves or others who were responsible for such wrongful conduct, the wrongdoer's are instead rewarding themselves with golden parachutes in the event of termination for "misconduct".

60. The members of the Board have not only been grossly negligent in acting on behalf of the Company, but were necessary actors in the improper conduct alleged herein, and have actively condoned and facilitated a campaign of deceit upon the shareholders of the Company. The Board promoted the continuation of the scheme to further their personal interests as directors of the Company and as a result of their loyalty to RHI's executive officers. The Board has failed to act in response to the events outlined herein. Accordingly, the members of the Board cannot possibly be expected to act independently in charging themselves with wrongdoing.

61. Mr. Messmer is apparently confused as he continues to fail to realize that the key responsibility of RHI's Company's corporate counsel is to protect the Company, not him individually. Ultimately, it is the sole responsibility of each and every member of the Board of Directors, corporate officers and directors to protect themselves in the event that they become subject to litigation.

22

62.     In many instances directors and officers believe that they are adequately covered, if they obtain both Professional Liability and Directors and Officers insurance coverage. However, each carrier might argue that coverage does not apply, if in a given fact situation the role of the officer/director is in disarray. Under some D&O policies, coverage does not apply unless the officer/director is acting "solely" as an officer/director. Specifically, insurance carriers often request information regarding a company's compliance with Sarbanes Oxley. Defendant RHI's conduct could have negative implications should carriers determine that RHI is not complying with Federal and State government regulations and that RHI's financial statements are misleading and omits material risks to the Enterprise.

## COUNT 1

### Against All Defendants
### For Breach of Fiduciary Duty (Insider Trading)

63.     Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

64.     At the time that Defendants sold their RHI stock or acquiesced to or approved the sale of RHI stock by other Company insiders, by reason of their director and/or executive positions with the Company, these Defendants had access to and knew adverse material information regarding RHI, including the materially adverse information alleged herein.

65.     That information was not generally available to the public or to the securities markets, and Defendants knew it was not available. Had such information been generally available, it would have significantly reduced the market price on RHI shares as will be

23

evidenced by the regulatory authorities and the market's reaction when this information is ultimately disclosed.

66.    In selling their RHI shares, or in acquiescing to or approving the sale of RHI stock by other Company insiders, with knowledge of material adverse non-public information, Defendants violated their duties of good faith and loyalty to the Company and are liable for the unlawful insider trading profits they received or facilitated as the result of same. Plaintiff seeks those damages on behalf herself and RHI with respect to the sales of RHI stock described herein.

67.    In allowing the regular dissemination of misleadingly positive information-- including highly suggestive and misleading forecasts as well as such statements as suggested that Defendants were buyers of RHI stock when they were in fact sellers. In the first six months of 2009, insiders sold 8.4 million shares and purchased none during said period. Defendants have left in place a process that lacks internal controls, policies, and enforcement mechanisms designed to protect RHI, its shareholders and the investment community form the inherent injury and inevitable regulatory and legal costs as outlined above.

68.    By exposing the Company to these risks, Defendants have each breached their fiduciary duties to RHI and its shareholders, causing damage in an amount to be determined at trial and requiring implementation of new policies and procedures.

24

## COUNT II
### Against All Defendants
### For Unjust Enrichment

62.     Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

63.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of RHI.

64.     Plaintiff, as a shareholder and representative of RHI, on April 26, 2007 seeks restitution from these Defendants, and each of them. Plaintiff also seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relies as follows: (a) Determining that each Defendant breached his or her fiduciary duty and was unjustly enriched; (b) Requiring Defendants to account to the Company for their and others' unlawful profits gained through compensation, bonuses and/or insider trading during the relevant period and establishing a constructive trust for their deposit; (c) Awarding Plaintiff and RHI disgorgement and restitutionary damages against Defendants in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law; (d)

25

Awarding plaintiff costs and disbursements and reasonable attorneys' and experts' fees and expenses; and Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Date: _September 29, 2009_

Margaret Hunter, Plaintiff
P.O. Box 2281
Easley, SC 29641
(864)905-6344
rhi.boardofdirectorslitigation@gmail.com

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: September 29, 2009

Respectfully submitted,

Margaret Hunter, Plaintiff
P.O. Box 2281
Easley, SC 29641
(864)905-6344
rhi.boardofdirectorslitigation@gmail.com

27

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

MARGARET HUNTER, derivatively on behalf of herself and Robert Half International, Inc.

        Plaintiff,

    v.

HAROLD M. MESSMER, JR.,
M. KEITH WADDELL
ANDREW S. BERWICK, JR.
FREDERICK P. FURTH,
EDWARD W. GIBBONS
BARBARA J. NOVOGRADAC
ROBERT J. PACE
FREDERICK A. RICHMAN
J. STEPHEN SCHAUB
THOMAS J. RYAN
PAUL F. GENTZKOW
MICHAEL C. BUCKLEY
ROBERT W. GLASS
STEVEN KAREL

        Defendants,

    -and-

ROBERT HALF INTERNATIONAL, INC

        Nominal Defendant.

Case No. :

**VERIFICATION**

Pursuant to 28 U.S.C. Section 1746 and the requirements of Federal Rule of Civil Procedure 23.1, the undersigned verifies under penalty of perjury that the statements set forth in the foregoing pleading is true and correct to the best of her knowledge.

Dated: September 29, 2009

By: _____
Margaret Hunter

28